UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

GENERAL TEAMSTERS UNION LOCAL NO. 439,

      Petitioner,

  v.

SUNRISE SANITATION SERVICES, INC.,

      Respondent.

NO. CIV. S-05-1208 WBS JFM

MEMORANDUM AND ORDER RE: MOTION TO COMPEL ARBITRATION AND CROSS-MOTION FOR SUMMARY JUDGMENT

----oo0oo----

Pursuant to 29 U.S.C. § 185, petitioner General Teamsters Union Local No. 439 filed this petition to compel respondent Sunrise Sanitation Services, Inc. to arbitrate a labor grievance. Petitioner bases its request on the terms of a collective bargaining agreement ("CBA") entered into between respondent and the bargaining representative that preceded petitioner. Currently before the court are (1) petitioner's motion to compel arbitration and (2) respondent's motion for summary judgment.

1

I.  Factual and Procedural Background

The facts of this dispute are largely uncontested. Respondent, a waste collection and disposal company located in Stockton, California, had a longstanding collective bargaining relationship with an independent union known as the Sunrise/Sunset Employees Association ("the Association"). (Resp't Statement of Undisputed Facts ("SUF") No. 2.)  However, on October 28, 2004, members of the Association voted, by a show of hands, to merge their existing bargaining representative with petitioner's international organization. (Id. Nos. 15-17.) The merger agreement provided that, "effective October 28, 2004, the Association 'will cease to exist as an independent entity and shall be consolidated into' Local 439." (Id. No. 19.)

Typically, when members of an existing union vote to affiliate or merge with another union, the National Labor Relations Board ("NLRB" or "the Board") willingly grants the concomitant petition[1] to amend certification, which establishes the recently elected union as the employees' labor representative. NLRB v. Fin. Inst. Employees of Am., 475 U.S. 192, 199 (1986) (hereinafter "Seattle-First"). However, when "the organizational changes accompanying affiliation [are] substantial enough to create a different entity, the affiliation raise[s] a 'question concerning representation' which [can] only be resolved through the Board's election procedure." Id. Here, the parties stipulated on November 5, 2004 "that a valid question

---

[1] Although not required, a certification petition is routinely filed with the Board to prevent the employer from resisting a newly affiliated union's efforts to bargain. See Seattle-First, 475 U.S. at 200 n.8.

2

concerning representation ('QCR') existed and consented to a representation election to be conducted by the NLRB . . . ." (SUF No. 43.)  The Board conducted this election on December 3, 2004 and certified petitioner "as the bargaining agent for 'all full-time and regular part-time drivers at [respondent's] facility located [in Stockton]" on December 14, 2004.  (Id. No. 44.)

Concurrent with these events, Shane Thomasson, a refuse truck driver for respondent, "was involved in his second on-the-job vehicular accident in less than a month" on December 1, 2004. (Basso Decl. ¶ 3.)  He was suspended and later terminated on December 13, 2004 following a determination by respondent that his accidents were preventable.  (Id.)

The instant dispute arises out of petitioner's desire to submit for arbitration a grievance pertaining to Thomasson's discharge, pursuant to the terms of the CBA entered into by respondent and the Association.  This agreement was intended to be in effect from January 1, 2002 through December 31, 2004 and thereafter subject to termination or renegotiation upon 60 days notice "by either party to the other party prior to December 31, 2004."  (Palacio Decl. Ex. A at TEMO024.)  On October 27, 2004, the day before the Association members undertook their first vote on the merger with petitioner, the Association's leadership signed a letter which purported "to terminate the current collective bargaining agreement effective December 31, 2004 . . . ."  (Id. Ex. B.)  Pablo Barrera, petitioner's business representative, forwarded this letter to Don Gomez, one of respondent's representatives.  (Id. ¶ 12.)  However, regardless

3

of this alleged arrangement, respondent has resisted petitioner's efforts to enforce Thomasson's rights pursuant to the terms of the CBA and primarily argues that the existing CBA terminated once the Association ceased to exist. (Resp't Cross-Mot. for Summ. J. 11.)[2]

II. <u>Discussion</u>

In opposition to petitioner's motion to compel arbitration, respondent submitted a cross-motion for summary judgment. Because petitioner "[is] seeking by [its] motion to have the [c]ourt award the ultimate relief sought," it is appropriate to, as the parties have done, treat petitioner's motion to compel arbitration and respondent's motion for summary judgment as cross-motions for summary judgment. <u>Teamster Automotive Employees Local Union No. 665 v. Ampco Parking</u>, No. C93-4577, 1994 WL 72209, at *1 (N.D. Cal. Feb. 28, 1994); <u>see also</u> <u>Cincinnati Newspaper Guild, Local 9 v. Cincinnati Enquirer, Inc.</u>, 863 F.2d 439, 444 (6th Cir. 1988) ("The Guild's motion to compel arbitration was a motion for summary judgment, in effect, as the Enquirer recognized when it styled its own subsequent motion a 'cross-motion' for summary judgment.").

///

---

[2] On March 24, 2006, the court held a hearing to address respondent's 27 objections to the declarations of Pablo Barrera, Humberto Palacio, and Edward Speckman. It became increasingly clear in those proceedings that many of respondent's objections were needless and consequently, several were withdrawn pursuant to a stipulated order submitted by the parties. (Mar. 29, 2006 Order.) Additionally, petitioner submitted revised declarations from Barrera, Palacio, and Speckman on April 3, 2006 to address the objections that did have merit and were relevant to a motion for summary judgment. The court has relied on these revised declarations, to which no objections are made, in considering these motions.

A.   <u>Legal Standard</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). Alternatively, the movant can demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial. <u>Id.</u>

Although both sides must argue that there are no uncontested issues of material fact in filing cross-motions for summary judgment, this "does not vitiate the court's responsibility to determine whether disputed issues of material fact are present." <u>United States v. Fred A. Arnold, Inc.</u>, 573 F.2d 605, 606 (9th Cir. 1978). The court "must review the evidence submitted in support of <u>each</u> cross-motion [in a light most favorable to the non-moving party] and consider each party's motions on their own merits." <u>Corbis Corp. v. Amazon.com, Inc.</u>, 351 F. Supp. 2d 1090, 1097 (W.D. Wash. 2004) (emphasis added).

5

B.   <u>Jurisdiction</u>

As an initial matter, respondent argues that this court lacks jurisdiction to rule in favor of petitioner because this outcome necessarily depends on a determination that petitioner was a "successor union." Such matters, respondent contends, are within the Board's exclusive jurisdiction. Indeed, pursuant to section 9 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(b), the Board has "exclusive jurisdiction to determine questions of representation in the context of collective bargaining." <u>Oil, Chem. & Atomic Workers Int'l v. Standard Oil Co. of Ind.</u>, 529 F. Supp. 184, 185 (N.D. Ill. 1981) (citing <u>West Point-Pepperell v. Textile Workers Union of Am.</u>, 559 F.2d 304, 307 (5th Cir. 1977)). Consequently, district courts may not initially "consider and pass upon questions of representation and determination of appropriate bargaining units." <u>United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. v. Valley Eng'rs</u>, 975 F.2d 611, 614 (9th Cir. 1992) (quoting <u>Local 3-193 v. Ketchikan Pulp Co.</u>, 611 F.2d 1295, 1301 (9th Cir. 1980)).

In the context of a merger, whether the subsequent union merely continues to represent employees as a "successor union" or constitutes a new bargaining representative altogether presents a representation question. <u>West Point-Pepperell</u>, 559 F.2d at 307; <u>Carpinteria Lemon Ass'n v. NLRB</u>, 240 F.2d 554, 557 (9th Cir. 1957). Therefore, it appears that questions regarding whether petitioner succeeded the Association as the bargaining representative for respondent's truck drivers are beyond the

scope of this court's authority.[3] Nw. Adm'rs, Inc. v. Con Iverson Trucking, Inc., 749 F.2d 1338, 1339 (9th Cir. 1984) ("Usually district courts have no jurisdiction to decide representational issues and must leave them for decision by the NLRB."); Point-Pepperell, 559 F.2d at 307 ("[W]herever there is a change in the representation of a union, the board, and not the courts, is the proper body to reassess the change."). However, respondent's arguments place too much weight on the importance of petitioner's status as a successor union.

The court's apparent inability to decide this issue does not require that the court rule in favor of respondent. The successor organization doctrine is frequently addressed in cases where an original party to the CBA seeks to hold a subsequent organization to the terms agreed to by a predecessor entity. Under such circumstances, an organization that merely stepped into the predecessor's shoes, (i.e., a successor organization) can be bound to arbitrate with the original parties to the CBA. NLRB v. Burns Int'l Sec. Serv., Inc., 406 U.S. 272, 291 (1972). The successor can also be held to the substantive terms of the agreement--but only if it expressly or implicitly adopted the agreement and/or its terms. Id.

The need to apply the successor doctrine in a case such as this, where the potential successor organization seeks to enforce the CBA, is questionable. The requirements that a

---

[3] The Fifth Circuit has further noted that although district courts "have concurrent jurisdiction over questions of employer successorship," they lack "concurrent jurisdiction over questions of union successorship." Point-Pepperell, 559 F.2d at 307.

7

subsequent organization (1) share substantial continuity of identity with the predecessor and (2) agree to be bound by the CBA before it can be held to its terms were established because of a concern that non-signatories might be saddled with terms and conditions of employment to which they never agreed. Id. at 287-88. Such concerns are not present when a new representative seeks to enforce the terms of a CBA that the entity resisting enforcement was actually a party to. See Cincinnati Newspaper, 863 F.2d at 445 (observing that allowing a new union to enforce an existing CBA would not "saddle[ the employer] with substantive contract provisions that it had neither agreed to nor assumed because the [employer] had in fact agreed to all of the provisions of the contract, including the arbitration provisions" (citation omitted)).

Moreover, the court need not rely on this doctrine, an admitted distortion of ordinary contract law, when regular contract principles can resolve this dispute. See John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 550 (1964) (recognizing that allowing courts to enforce a labor agreement to arbitrate against "an unconsenting successor to a contracting party" constitutes an exception to ordinary contract law); see also S. Cal. Painters & Allied Trade Dist. Council No. 36 v. Best Interiors, Inc., 359 F.3d 1127, 1134 (9th Cir. 2004) ("We have long recognized that general principles of contract law apply to the formation of collective bargaining agreements." (quotation omitted)). As petitioner correctly points out, successorship is not the only grounds upon which this court can rule that petitioner has standing to enforce the CBA. Consequently, the

8

court need not engage in a substantial continuity, or successorship, analysis.[4]

C.  State of the CBA After the Merger

Under ordinary rules of contract law, a contractual right is assignable unless assignment to another would materially change the terms of the contract or the contract validly precludes assignment by its terms. Restatement (Second) of Contracts § 317(2)(a)-(c) (1981). Similarly, a contracting party can delegate its performance of the contract as long as "delegation is [not] contrary to public policy or the terms of [the] promise" and the performance guaranteed by the contract need not be personal. Id. § 318.

The CBA entered into by the Association and respondent does not contain provisions that limit either party's ability to assign the agreement to another organization. Additionally, public policy constrains a "certified representative's" power to

---

[4] Furthermore, some support exists for the argument that a successorship inquiry is completely unnecessary where, as here, a new union expressly agreed to adopt the CBA or "act[ed] in a way that is consistent with an intent to be bound." New Eng. Mech., Inc. v. Laborers Local Union 294, 909 F.2d 1339, 1342-43 (9th Cir. 1990). The Ninth Circuit has suggested that even when an organization undergoes "an almost complete change in ownership and management," it can still be bound to the terms of a predecessor's CBA if it affirmatively adopts the agreement. Id. Significantly then, in addition to petitioner's efforts to arbitrate Thomasson's discharge pursuant to the CBA, the declaration of Pablo Barrera, a business representative for petitioner, provides further evidence that the Teamsters intended to be bound by the Association's CBA. (See Barrera Decl. ¶¶ 8, 13 ("It was the understanding of the Union that the Union would enforce the terms of the collective bargaining agreement through its expiration on December 31, 2004 . . . .")); see also S. Cal. Painters, 359 F.3d at 1134 ("The Union's sworn testimony that it intended to be bound by an oral agreement sufficiently establishes, for summary judgment purposes, the Union's intent to be bound.").

1  delegate its responsibilities only when the new and old
2  representatives are attempting to use delegation of the CBA to
3  effectively substitute representatives without having to secure
4  the Board's approval.  Nev. Sec. Innovations, Ltd., 341 NLRB No.
5  126, 2004 WL 1131249, at *5-6 (May 18, 2004) ("[A] certified
6  representative may delegate its duties under a contract,
7  [however,] it cannot delegate its responsibilities.").  Because
8  petitioner has already been certified as the appropriate
9  bargaining representative for respondent's truck drivers, the
10 court need not be concerned that assignment of the CBA was
11 undertaken here as part of an end-run around the Board's
12 procedural requirements.  Finally, labor contracts are not
13 generally of a personal nature, and consequently their assignment
14 to a third party is not prohibited on these grounds.  Cincinnati
15 Newspaper, 863 F.2d at 445.

16          In response to petitioner's argument that it willingly
17 adopted the rights and obligations of the Association when it
18 became the Board certified representative, respondent argues that
19 no agreement existed for petitioner to assume.  Relying on Sun
20 Oil Co. of Pennsylvania v. NLRB, 576 F.2d 553 (3d Cir. 1978),
21 respondent posits that "[a] merger which creates a new bargaining
22 representative terminates the old bargaining agreement."  (Resp't
23 Reply 3.)  Indeed, respondent's characterization of the holding
24 in Sun Oil is accurate.  However, the reasoning in that case was
25 undermined in significant respects by the Supreme Court's
26 decision in Seattle-First, 475 U.S. at 199 n.5, where the Court
27 abrogated cases that placed too much emphasis on the impact that
28 affiliation with a larger, stronger union would have on the

1  bargaining position of the employer.  See CPS Chem. Co., Inc. v.
2  NLRB, 160 F.3d 150, 159 (3d Cir. 1998).  Although the holding of
3  Sun Oil regarding the post-merger viability of a CBA has not been
4  expressly overruled, because the outcome was likely colored by
5  excessive concern about the employer's bargaining position, its
6  value is questionable.
7       Moreover, Sun Oil is at odds with decisions in other
8  circuits and, by analogy, the Supreme Court's decision in Wiley.
9  Significantly, the Court held in Wiley that "the disappearance by
10 merger of a corporate employer . . . does not automatically
11 terminate all rights of the employees covered by the agreement .
12 . . ."  376 U.S. at 548 (emphasis added).  Similarly, the Second
13 Circuit has noted in dicta that when the bargaining relationship
14 between the parties to a CBA dissolves, termination of the
15 agreement is "at the prerogative of the incoming union"--it does
16 not happen automatically.  Mulvaney Mech., Inc. v. Sheet Metal
17 Workers Int'l Ass'n, Local 38, 288 F.3d 491 (2d Cir. 2002),
18 vacated 538 U.S. 918, aff'd on remand 351 F.3d 43 (2003); see
19 also United Auto., Aerospace & Agric. Implement Workers of Am. v.
20 Telex Computer Prods., Inc., 816 F.2d 519, 523 (10th Cir. 1987)
21 ("Events which may change relations between and among employer,
22 union, and employees may impact but do not destroy the right to
23 redress arising under and relating to a valid preexisting
24 contract.").
25       Of particular note, the Sixth Circuit has held, in a
26 case with many factual similarities, that "the right of the
27 employees to have their grievances arbitrated in accordance with
28 procedures hammered out between the employer and a properly

11

recognized bargaining agent may not be abrogated by the employer merely because the employees subsequently see fit to change their agent." Cincinnati Newspaper, 863 F.2d at 445-46. In Cincinnati Newspaper, one union replaced another pursuant to a representation election conducted after the employer questioned the subsequent union's continuity of representation. Id. at 445. When the new representative sought to arbitrate a dispute about overtime payment, pursuant to the terms of a preexisting CBA that was still in effect, the employer refused, arguing that a non-signatory could not enforce the agreement. Id. at 442, 445. Reasoning that the employees, who are the actual principals to a labor agreement, should be able to change their bargaining agent without impacting the existence of the agreement itself, the court remanded the case with instructions to compel arbitration.[5] Id. at 445-46.

The Sixth Circuit's rule that election of a new bargaining representative does not terminate an agreement between an employer and a preexisting union and that this agreement can be voluntarily assumed by the new representative is simply better

---

[5] The idea that the representative is the agent of the employees who are principals to the CBA was implicitly rejected by the Board in American Seating Co., 106 NLRB 250, 251, 255 (1953). However, in American Seating, the Board worried that if it defined employees as principals, employers could argue that the existing CBA was still binding between employers and employees, despite the election by the employees of a new bargaining representative, chosen expressly for the purpose of negotiating new terms. Id. at 255. The rule in American Seating was specifically tailored to prevent the emasculation of newly chosen representatives. Moreover, it was established in a case where a signatory to the agreement sought to hold a non-signatory to its terms. Id. These same concerns are not at issue in this case, where a non-signatory seeks to hold a signatory to terms that it already agreed to.

reasoned than the questionable holding in Sun Oil. Because an existing CBA "may not be abrogated by the employer merely because the employees subsequently see fit to change their agent," petitioner's election as the new representative of respondent's truck divers did not terminate the existing CBA. See id. at 446. Moreover, through this action to compel respondent to arbitrate Thomasson's discharge grievance and through declarations attesting to the Association's and petitioner's intent to have the Union enforce the terms of the collective bargaining agreement through its expiration on December 31, 2004, petitioner has demonstrated its intent to assume the CBA. (See, e.g., Palacio Decl. ¶¶ 11, 15.) Consequently, petitioner has standing to seek arbitration pursuant to the terms of the agreement.[6]

D. Attorneys' Fees

As a final matter, both parties have requested attorneys' fees. However, petitioner cites no legal authority for an award, and respondent provides only its conclusion that fees are warranted because this petition was frivolous and filed in bad faith, based on the Board's prior decision not to hear

---

[6] The court notes that the preexisting CBA in this case described the Association in detail--specifically the agreement described the preceding union's structure and operating procedures. (Resp't Reply 6 n.1.) As respondent rightly notes, the structure of the new bargaining representative and its operating procedures are inconsistent with these terms. However, even if these changes alter the agreement to such a degree that it is either no longer enforceable or is at least voidable by respondent, this is a matter for the arbitrator. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) (holding that defenses to enforcement are a matter for the arbitrator; district courts only handle "questions of arbitrability"--the "gateway dispute[s] about whether the parties are bound by a given arbitration clause").

13

petitioner's unfair labor practices claim.

"[A]bsent contractual or statutory authorization, a prevailing litigant ordinarily may not collect attorneys' fees." Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maint., Inc., 707 F.2d 425, 428 (9th Cir. 1983). Still, the court may award fees "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id. (quotation omitted). Additionally, because federal policy favors arbitration, a less demanding "without justification" standard applies in cases involving refusals to arbitrate. United Food & Commercial Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382-83 (9th Cir. 1984) (holding that an "award of fees is appropriate when a party frivolously or in bad faith refuses to submit a dispute to arbitration or appeals from an order compelling arbitration").

Given these standards, attorneys' fees are not warranted in this case. Petitioner, who will be awarded the relief sought by this motion, has failed to identify a contractual or statutory source for an award of attorneys' fees. Further, given the Board's prior decision in respondent's favor, the court fails to see how respondent's opposition to petitioner's motion to compel arbitration can be labeled as "in bad faith" or "without justification."

III. Conclusion

At no time has respondent argued that the dispute over Thomasson's discharge is not a matter for arbitration pursuant to the terms of the CBA that it entered into with the Association. (See Resp't Reply 2 (conceding that "[t]here is no dispute that

14

if the Union is the Association's successor, then the greivance would be arbitrable under the CBA").)  Instead, respondent has only argued that the terms of the CBA cannot be enforced by petitioner.  Because the court has rejected this proposition and herein holds that petitioner can enforce the agreement, an order compelling respondent to arbitrate the matter is warranted.

       IT IS THEREFORE ORDERED that petitioner's motion to compel arbitration be, and the same hereby is, GRANTED.

       IT IS FURTHER ORDERED that respondent's motion for summary judgment be, and the same hereby is, DENIED.

       IT IS FURTHER ORDERED that both petitioner and respondent's motions for attorneys' fees be, and the same hereby are, DENIED.

DATED: April 25, 2006

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE