UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

GENERAL TEAMSTERS UNION LOCAL
NO. 439,

        Petitioner,

  v.

SUNRISE SANITATION SERVICES,
INC.,

        Respondent.

NO. CIV. S-05-1208 WBS JFM

MEMORANDUM AND ORDER RE:
RESPONDENT'S MOTION TO STAY
ARBITRATION AND PETITIONER'S
MOTION TO HOLD RESPONDENT IN
CONTEMPT

----oo0oo----

Pursuant to 29 U.S.C. § 185, petitioner General Teamsters Union Local No. 439 filed a petition to compel respondent Sunrise Sanitation Services, Inc. to arbitrate a labor grievance.  On April 25, 2006, the court granted petitioner's motion to compel arbitration and denied respondent's motion for summary judgment.  Soon thereafter, respondent lodged an appeal of that judgment with the Ninth Circuit Court of Appeals and now seeks a stay of the arbitration proceedings pending appeal.

1

Petitioner has responded with a motion to hold respondent in
contempt for its failure to proceed to arbitration in a timely
manner.  For the following reasons, both motions will be denied.

I.   Factual and Procedural Background

The facts underlying this dispute are largely
uncontested.  Respondent, a waste collection and disposal company
located in Stockton, California, had a longstanding collective
bargaining relationship with an independent union known as the
Sunrise/Sunset Employees Association ("the Association").
(Resp't Statement of Undisputed Facts ("SUF") No. 2.)  However,
on October 28, 2004, members of the Association voted, by a show
of hands, to merge their existing bargaining representative with
petitioner's international organization.  (Id. Nos. 15-17.)  The
merger agreement provided that, "effective October 28, 2004, the
Association 'will cease to exist as an independent entity and
shall be consolidated into' Local 439."  (Id. No. 19.)

Concurrent with these events, Shane Thomasson, a refuse
truck driver for respondent, "was involved in his second on-the-
job vehicular accident in less than a month."  (Basso Decl. ¶ 3.)
He was suspended and later terminated on December 13, 2004,
following a determination by respondent that his accidents were
preventable.  (Id.)

Subsequently, petitioner attempted to submit for
arbitration a grievance pertaining to Thomasson's discharge,
pursuant to the terms of the collective bargaining agreement
("CBA") entered into by respondent and the Association.  This
agreement was intended to be in effect from January 1, 2002
through December 31, 2004 and thereafter subject to termination

2

1  or renegotiation upon 60 days notice "by either party to the
2  other party prior to December 31, 2004." (Palacio Decl. Ex. A at
3  TEMO024.)  Respondent refused petitioner's request to arbitrate,
4  reasoning that the existing CBA terminated once the Association
5  ceased to exist and respondent was therefore no longer bound by
6  the terms of the agreement. (Resp't Cross-Mot. for Summ. J. 11.)

7          This litigation ensued, and the court granted
8  petitioner's motion to compel arbitration on April 25, 2006.
9  Respondent filed a notice of appeal regarding that judgment on
10 May 11, 2006 and sought to stay the court's order compelling
11 arbitration on June 13, 2006 (after attempts to persuade
12 petitioner to stipulate to a stay failed). (Resp't Mot. to Stay
13 1.)  Respondent's motion to stay is now before the court, in
14 addition to petitioner's motion to hold respondent in contempt
15 for its failure to move forward with the ordered arbitration.
16 II.  Discussion

17      A.    Motion to Stay

18          A notice of appeal divests the district court "of
19 jurisdiction over the matters being appealed." Natural Res. Def.
20 Council, Inc. v. Sw. Marine Inc., 242 F.3d 1163, 1166 (9th Cir.
21 2001).  However, "[t]he principle of exclusive appellate
22 jurisdiction is not . . . absolute." Id.  Rather, the trial
23 court retains the inherent power "during the pendency of an
24 appeal to act to preserve the status quo", id., "and to ensure
25 the effectiveness of the eventual judgment", Tribal Vill. of
26 Akutan v. Hodel, 859 F.2d 662, 663 (9th Cir. 1988) (quoting 11
27 Charles Alan Wright et al., Federal Practice and Procedure §
28 2904, at 315 (1973)).  Specifically, Federal Rule of Civil

Procedure 62(c) permits a district court to "in its discretion . . . suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as . . . it considers proper for the security of the rights of the adverse party . . . ."[1]  See also Fed. R. App. P. 8(a)(1) (noting that "[a] party must ordinarily move first in the district" to obtain "a stay of the judgment or order of a district court pending appeal").

In deciding whether to grant an injunction pending appeal, courts apply the standard employed when considering a motion for a preliminary injunction.  Akutan, 859 F.2d at 663; Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir. 1983). Accordingly, respondent here must demonstrate "either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor."  Akutan, 859 F.2d at 663 (internal quotation marks omitted). Additionally, under either test, the court must separately consider the public interest, if one is at stake, when determining whether to grant equitable relief.  Sammartano v. First Judicial Dist. Court, 303 F.3d 959, 974 (9th Cir. 2002) ("If the public interest is involved, the district court must also determine whether the public interest favors the [movant]." (quoting Westlands Water Dist. v. Natural Res. Def. Council, 43 F.3d 457, 459 (9th Cir. 1994)) (emphasis added)).

---

[1]      The Ninth Circuit has been careful to point out that Rule 62(c) simply codifies the exception to the general rule of exclusive appellate jurisdiction and "does not restore jurisdiction to the district court to adjudicate anew the merits of the case."  McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, 686 F.2d 731 (9th Cir. 1982).

1    The Ninth Circuit has explained that the two aspects of
2 each test are inversely correlated.  <u>Earth Island Inst. v. U.S.</u>
3 <u>Forest Serv.</u>, 351 F.3d 1291, 1310 (9th Cir. 2003).  For example,
4 "the required degree of irreparable harm increases as the
5 probability of success decreases."  <u>W. Land Exch. Project v.</u>
6 <u>Dombeck</u>, 47 F. Supp. 2d 1216, 1217 (D. Or. 1999) (quoting <u>Oakland</u>
7 <u>Tribune, Inc. v. Chronicle Publ'g Co.</u>, 762 F.2d 1374, 1376 (9th
8 Cir. 1985)).  Furthermore, they are considered to be
9 "interrelated" and therefore their application need not be
10 independent of one another.  <u>Lopez</u>, 713 F.2d at 1435; <u>Sammartano</u>,
11 303 F.3d at 965 (recognizing as proper analysis the consideration
12 of success on the merits and balance of the hardships); <u>Protect</u>
13 <u>Our Water v. Flowers</u>, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004)
14 (treating success on the merits and a serious legal question as
15 one consideration and irreparable harm/balance of the hardships
16 as another).

17    1.  <u>Success on Merits/Serious Legal Question</u>

18    As this court has previously noted, the "'success on
19 the merits factor cannot be rigidly applied,' because if it were,
20 an injunction would seldom, if ever, be granted . . . ."  <u>Protect</u>
21 <u>Our Water</u>, 377 F. Supp. 2d at 884 (quoting <u>Or. Natural Res.</u>
22 <u>Council v. Marsh</u>, Civ. No. 85-6433-E, 1986 WL 13440, at *1 (D.
23 Or. Apr. 3, 1986)).  A rigid application would require the
24 district court "'to conclude that it was probably incorrect in
25 its determination on the merits.'"  <u>Id.</u>  Accordingly, "district
26 courts properly 'stay their own orders when they have ruled on an
27 admittedly difficult legal question and when the equities of the
28 case suggest that the status quo should be maintained.'"  <u>Id.</u>

1  Injunctions are thus "frequently issued where the trial court is
2  charting new and unexplored ground and the court determines that
3  a novel interpretation of the law may succumb to appellate
4  review." Stop H-3 Ass'n v. Volpe, 353 F. Supp. 14, 16 (D. Haw.
5  1972).

6       In this case, respondent's chances of succeeding on the
7  merits of its appeal are entirely speculative.  In opposition to
8  petitioner's motion to compel arbitration, respondent argued that
9  a Third Circuit case, the underpinnings of which have been
10 overruled by the Supreme Court, should guide this court's
11 analysis. See Sun Oil Co. of Penn. v. NLRB, 576 F.2d 553 (3d
12 Cir. 1978), abrogated in part by NLRB v. Fin. Inst. Employees of
13 Am., 475 U.S. 192, 199 n.5 (1986).  The court rejected this
14 proposition, however, and instead relied on a decision from the
15 Sixth Circuit which, when applied to the facts of this case, led
16 the court to grant petitioner's motion. See Cincinnati Newspaper
17 Guild, Local 9 v. Cincinnati Enquirer, Inc., 863 F.2d 439, 445
18 (6th Cir. 1988).  Respondent's appeal, as described in its motion
19 to stay arbitration, rests on, inter alia, an argument that
20 Cincinnati Newspaper is both factually distinguishable and
21 contrary to Supreme Court guidance.  While the Court of Appeals
22 may eventually find respondent's, and not the court's, analysis
23 more persuasive, the court can only hazard a guess as to the
24 probability that respondent will succeed.

25      Weighing decidedly in respondent's favor, however, is
26 the fact that the parties have raised what appears to be a matter
27 of first impression in this circuit.  The Ninth Circuit has not
28 yet considered whether presenting employees with a Hobson's

6

1  choice between their interest in securing new representation and

2  preserving their existing CBA is consistent with national labor

3  policy.  As the court has previously noted, while an abundance of

4  authority addresses the implications of an existing CBA for

5  successor employers, a paltry amount of analysis has been

6  dedicated to the status of an existing CBA when the <u>union</u> is the

7  successor.  (Apr. 25, 2006 Order 7-8.)  The courts of this

8  circuit would benefit from a decision that clarifies the

9  viability of an existing CBA in the aftermath of a change in

10 representation and outlines what, if anything, a successor union

11 can do to preserve the terms of an existing CBA while negotiating

12 a CBA of its own.

13      Petitioner cites the lack of previous litigation on

14 this issue as evidence that the circumstances of this case are

15 unique and argues that "the legal question raised in this case

16 will not be repeated." (Pet.'s Opp'n to Mot. to Stay 7.)  From

17 this, petitioner concludes that this case does not present a

18 serious legal question. (<u>Id.</u>)  However, petitioner cites no

19 authority for this proposition.  Moreover, courts have recognized

20 that "novel" legal issues may support injunctive relief.  <u>See,</u>

21 <u>e.g.</u>, <u>Beaumont, Sour Lake & W. Ry. Co. v. United States</u>, 282 U.S.

22 74, 91 (1930); <u>Stop H-3 Ass'n</u>, 353 F. Supp. at 16.  Consequently,

23 because this case presents a novel legal question that <u>may</u>

24 succumb to appellate review,[2] respondent has satisfied the first

25

26      [2]   The parties appear to dispute whether the court's April
        25, 2006 order compelling arbitration is even appealable.  (<u>See</u>
27      July 7, 2006 Grajski Decl. Exs. B-C.)  The Ninth Circuit has held
        that "an order compelling arbitration may be immediately appealed
28      [where, as here,] it is the complete relief sought." <u>Abernathy</u>

7

1  half of the preliminary injunction test.

2            2.   <u>Irreparable Harm/Balance of Hardships</u>

3         However, a serious legal question, standing alone,

4  cannot justify a stay.  <u>See</u> <u>PaineWebber Inc. v. Farnam</u>, 843 F.2d

5  1050, 1052 (7th Cir. 1988) ("[E]ven a strong likelihood of

6  reversal is not enough to get a stay of arbitration pending

7  appeal.").  As noted above, respondent also must show that

8  requiring it to proceed with the ordered arbitration while an

9  appeal is pending will cause it irreparable harm or a hardship

10  that outweighs the burden that further delay will visit on

11  petitioner.  In support of this requirement, respondent argues

12  that if this court denies a stay, the parties <u>might</u> needlessly

13  waste time and incur expenses in pursuit of an arbitration that

14  <u>could</u> later be deemed invalid.  (Resp't Mot. to Stay Arbitration

15  9.)

16         The Ninth Circuit has made clear "that unnecessarily

17  undergoing arbitration proceedings [does not] constitute[]

18  irreparable injury" and consequently, respondent's success hinges

19

20

21  <u>v. S. Cal. Edison</u>, 885 F.2d 525, 528 n.13 (9th Cir. 1989); <u>see</u>
   <u>also</u> <u>Goodall-Sanford, Inc. v. United Textile Workers of Am.,</u>
22  <u>A.F.L. Local 1802</u>, 353 U.S. 550, 551-52 (1957) ("A decree under §
   301(a) ordering enforcement of an arbitration provision in a
23  collective bargaining agreement is . . . a 'final decision'
   within the meaning of 28 U.S.C. § 1291").  However, other courts
24  have questioned the finality of orders to arbitrate under § 301
   when the trial court does not concurrently order that the
25  arbitrator's decision will be final and binding (thereby
   surrendering "jurisdiction to confirm the arbitrator's
26  decision").  <u>Int'l Ass'n of Machinists & Aerospace Workers Local</u>
   <u>Lodge 2121 AFL-CIO v. Goodrich Corp.</u>, 410 F.3d 204, 209 (5th Cir.
27  2005) (citation omitted).  Nevertheless, because the parties did
   not brief this issue, the court will leave the appealability of
28  its order for the Court of Appeals to decide.

on whether the balance of hardships tips in its favor.[3]  <u>Camping Constr. Co. v. Dist. Council of Iron Workers</u>, 915 F.2d 1333, 1349 (9th Cir. 1990) (noting that "the party objecting to arbitration might well suffer no harm at all, irreparable or otherwise, for the arbitration panel might decide in its favor"); <u>see also</u> <u>Graphic Commc'ns Union v. Chi. Tribune Co.</u>, 779 F.2d 13, 15 (7th Cir. 1986) (holding that even where the appellate court might determine that the trial court erroneously ordered the parties arbitrate a dispute they had not agreed to arbitrate (because the CBA had expired), "the cost of the arbitration, whether it is an opportunity cost of time or an out-of-pocket expense . . . does not show irreparable harm").  Accordingly, the court must consider the impact that granting or denying respondent's motion will have on the respective parties.  <u>Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.</u>, 4 F.3d 819, 827 (9th Cir. 1993).

---

[3]     Respondent attempts to distinguish <u>Camping Construction</u>, reasoning that the cited language is inapplicable here because the discussion in that case focused on the arguably more stringent standards for injunctive relief required by the Norris-LaGuardia Act.  It urges the court to instead rely on cases holding that irreparable harm would result from requiring an employer to arbitrate a dispute <u>prior to determining the dispute at issue was arbitrable</u>.  <u>McLaughlin Gormley King Co. v. Terminix Int'l Co.</u>, 105 F.3d 1192, 1194 (8th Cir. 1997).  Such cases are clearly distinguishable from the instant litigation, given that the court has already determined that this dispute <u>is</u> arbitrable.  <u>See</u> <u>McLaughlin</u>, 105 F.3d at 1194 (distinguishing cases "in which irreparable was discussed only after the court concluded that the dispute was, in fact, arbitrable"); <u>see also</u> <u>Chi. Sch. Reform Bd. of Trs. v. Diversified Pharm. Servs., Inc.</u>, 40 F. Supp. 2d 987, 996 (N.D. Ill. 1999) (opining that "forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes <u>per se</u> irreparable harm" in an order holding that the parties <u>had not</u> agreed to arbitrate).  Moreover, the discussion of irreparable harm in <u>Camping Construction</u> speaks generally of what constitutes irreparable harm and respondent cites no authority for applying a different definition of "irreparable" in the context of a Rule 62 analysis.

1    As noted, the only harm that respondent faces if its

2   motion is denied is the expense of a potentially uncalled for

3   arbitration proceeding.  At oral argument, the court learned that

4   such proceedings might cost respondent as little as $750.

5   Meanwhile, petitioner describes a hardship consisting of Mr.

6   Thomasson having to wait for arbitration "to return himself to

7   his former position" and "ensure that any other or further

8   employment is not denied or tarnished by an unjustified

9   termination . . . ."  (Pet.'s Opp'n to Resp't Mot. to Stay 6.)

10    In the context of a due process challenge to the

11   allegedly wrongful discharge of public employees, Justice

12   Marshall discussed at length the plight of a wrongfully

13   terminated employee, observing that while an employee awaits the

14   proper grievance procedures, he

15          is left in limbo, deprived of his livelihood and of
            wages on which he may well depend for basic sustenance.
16          In that time, his ability to secure another job might
            be hindered, either because of the nature of the
17          charges against him, or because of the prospect that he
            will return to his prior . . . employment if permitted.
18          . . . [T]he personal trauma experienced during the long
            months in which the employee awaits decision, during
19          which he suffers doubt, humiliation, and the loss of an
            opportunity to perform work, will never be recompensed,
20          and indeed probably could not be with dollars alone.

21   Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 549 (1985)

22   (Marshall, J., concurring in part).  Although the Third Circuit

23   has stated that such injuries "ordinarily will not [per se]

24   warrant injunctive relief", Morton v. Beyer, 822 F.2d 364, 373

25   n.14 (3d Cir. 1987), they nonetheless are "very real", id., and

26   in this court's opinion, more significant than "the short time

27   and slight expense involved in the typical arbitration", Camping

28

10

Constr. Co., 915 F.2d at 1349.[4]  Therefore, although it appears
that neither side will clearly suffer irreparable harm if the
court grants or denies a stay, the balance of hardships favors
petitioner's, and not respondent's, position.  Consequently,
because respondent has failed to satisfy the second prong of
either test, a stay is not warranted in this case.

### 3.   Public Interest

Consideration of the public interest will not change
this outcome.  Even if, as respondent argues, the public interest
favoring arbitration should not apply in this case, this fact
does not prove the converse--that the public has an important
interest in not arbitrating this matter.

The court seriously doubts that the public has any
interest in whether respondent is required, justifiably or not,
to arbitrate this matter.  See Tribal Vill. of Akutan, 859 F.2d
at 663 (suggesting that the public interest consideration is only
applicable "in certain cases").  This is not a case where shared
natural resources are threatened.  See id.  Nor does this case
involve an alleged infringement of important constitutional
rights which will continue to afflict the masses unless the court
intervenes.  See Sammartano, 303 F.3d at 974 (public interest in
upholding First Amendment principles).  At most, the public has
only a generic interest in seeing that federal law is properly
applied--which is true of any case and thus cannot justify the

---

[4]     Furthermore, arbitration of Mr. Thomasson's grievance,
which will either (1) ensure that petitioner receives prompt
relief after enduring delay while this matter is on appeal or (2)
bring this matter to a close, is worth a mere $1,500 ($750 per
party).

1  extraordinary remedy sought by respondent.  Mazurek v. Armstrong,

2  520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an

3  extraordinary and drastic remedy . . . ." (quotation omitted));

4  Reading & Bates Petroleum Co. v. Musslewhite, 14 F.3d 271, 275

5  (5th Cir. 1994) ("Stays pending appeal constitute extraordinary

6  relief . . . .").  Moreover, because this court's orders are not

7  binding on other courts, including this one, the court's order

8  granting petitioner's motion to compel arbitration, whether or

9  not erroneous, has not created a practice that threatens to deny

10  others the protections of labor laws intended by Congress.  See

11  id. ("The public interest inquiry primarily addresses impact on

12  non-parties . . . .").  Consequently, the public interest does

13  not favor a stay of the court's order regarding arbitration.

14       The court recognizes that further developments in this

15  case might alter the balance of hardships to favor a stay.  As

16  respondent noted in its brief, "[i]f arbitration is resolved in

17  Thomasson's favor before the Ninth Circuit reaches its decision,

18  then Sunrise [might] suffer . . . irreparable injury by having to

19  re-employ a driver who has [allegedly] demonstrated that he

20  cannot operate a multi-ton refuse truck safely."  (Resp't Mot. to

21  Stay Arbitration 9.)  Under such circumstances, the public

22  interest might also come into play.  Cf. Exxon Corp. v. Esso

23  Worker's Union, Inc., 963 F. Supp. 58, 60 (D. Mass. 1997)

24  (granting a stay of an award that reinstated a truck driver who

25  used cocaine while off duty because the petitioner's "drug

26  problem . . . might seriously endanger the public").

27       However, at this time, respondent's arguments are both

28  conjectural and beyond the scope of this court's jurisdiction.

12

1    Whether Mr. Thomasson was properly discharged is a matter for the

2    arbitrator to decide at the impending arbitration proceedings.

3    <u>AT & T Techs., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 650

4    (1986) (opining that the merits of the underlying claims and

5    whether language in the written agreement supports the claim are

6    matters for the arbitrator).  If and when respondent's feared

7    outcome comes to pass, it can petition the court to stay

8    enforcement of the arbitrator's judgement.  <u>See</u> <u>Sheet Metal</u>

9    <u>Workers' Int'l Ass'n, Local 206 v. R.K. Burner Sheet Metal Inc.</u>,

10    859 F.2d 758, 760 (9th Cir. 1988) ("The district court has

11    jurisdiction under section 301 of the Labor Management Relations

12    Act . . . to vacate or enforce a final labor arbitration

13    award."); <u>see also</u> <u>S. Cal. Gas Co. v. Utility Workers Union of</u>

14    <u>Am., Local 132, AFL-CIO</u>, 265 F.3d 787, 796 (9th Cir. 2001)

15    (noting that regardless of whether reinstatement is required by

16    the terms of a CBA, courts can vacate an arbitration award

17    directing reinstatement if reinstatement would violate public

18    policy).  Granting a stay now would be premature, given that the

19    court will have other opportunities to control the impact of the

20    arbitrator's decision.

21        B.   <u>Motion to Hold Respondent in Contempt</u>

22        Also before the court is petitioner's motion to hold

23    respondent in criminal and/or civil contempt for failing to meet

24    its "demand[]", made on May 22, 2006, "that [respondent] agree

25    immediately to arbitration . . . ."  (July 7, 2006 Grajski Decl.

26    Ex. A (Letter from David A. Rosenfeld, counsel for petitioner).)

27    However, petitioner's motion is premature.  Federal Rule of Civil

28    Procedure 62(c) explicitly affords the losing party an

13

opportunity to seek a stay pending appeal.  This rule would be meaningless if, as here, parties could be held in contempt before the trial court was given an opportunity to consider such motions.  See Donovan v. Mazzola, 716 F.2d 1226, 1240 (9th Cir. 1983) (noting that established law requires only that "[a]bsent a stay, 'all orders and judgments of courts must be complied with promptly.'" (quoting Maness v. Meyers, 419 U.S. 449, 458 (1975)) (emphasis added)); Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 n.6 (9th Cir. 1992) (noting that the court had previously "held that a district court cannot find a party in contempt because it has not complied with an order until all attempts to stay that order have been exhausted").

Moreover, the sequence of events following the court's April 25, 2006 order compelling arbitration do not establish grounds for holding respondent in contempt--criminal or civil. "To sustain a judgment of criminal contempt, willful disobedience must be proved beyond a reasonable doubt." Clemente v. United States, 766 F.2d 1358, 1367 (9th Cir. 1985).  However, the party seeking contempt sanctions cannot make such a showing "when a stay has been immediately sought . . . ." Id. Petitioner attempts to distinguish this case from Clemente, where appellants filed their motion to stay concurrently with their notice of appeal, by focusing on the month-long gap between respondent's filing of a notice of appeal on May 11, 2006 and its filing of a motion to stay on June 13, 2006.  However, respondent has a laudable excuse for its delay--it was attempting to secure from petitioner a stipulation to stay arbitration pending appeal. (July 7, 2006 Grajski Decl. Exs. A-C.)  On June 5, 2006, when

14

respondent refused to further discuss this possibility,
respondent's counsel "completed [respondent's] pending motion to
stay as promptly as [he] could." (Id. ¶ 4.)  The court can
hardly fault respondent for attempting to first resolve the issue
of a stay before troubling the court with a motion for an order
of the same.  Its failure thus far to proceed with arbitration
was not in willful and deliberate defiance of this court's order
and therefore criminal contempt sanctions are not warranted.[5]

          Likewise, the circumstances of this case do not support
civil contempt sanctions.  Civil contempt "consists of a party's
disobedience to a <u>specific and definite court order</u> by failure
to take all reasonable steps within the party's power to comply."
<u>In re Dual-Deck Video Cassette Antitrust Litig.</u>, 10 F.3d 693, 695
(9th Cir. 1993) (emphasis added); <u>see also</u> Fed. R. Civ. P. 70
(allowing courts to hold parties in contempt when "a judgment
directs a party . . . to perform any . . . specific act and the
party fails to comply within the time specified").  As respondent
astutely points out, "the Order granting the Union's motion to

_____

    [5]    Moreover, aside from its citations to 18 U.S.C. §
401(3) (empowering courts to punish contempt of their authority),
petitioner has not actually requested relief in the form of
criminal contempt sanctions.  Petitioner requests that the court
order respondent "to pay a compliance fine of $1000 per day until
Respondent and Petitioner agree upon an arbitrator." (Pet.'s
Mot. to Hold Resp't in Contempt 3.)  This proposal appears to be
more akin to a civil contempt sanction, which is designed to
either "coerce the defendant into compliance with the court's
order, [or] . . . compensate the complainant for losses
sustained." <u>United States v. Mine Workers</u>, 330 U.S. 258, 303-04
(1947).  The proposed sanction lacks a retroactive aspect and is
not based on a completed act of disobedience--two of the telltale
signs of a criminal contempt sanction.  <u>Int'l Union, United Mine
Workers of Am. v. Bagwell</u>, 512 U.S. 821, 828-29 (1994).
Moreover, it can be avoided through immediate compliance, which
is indicative of a civil contempt sanction.  <u>Id.</u> at 829.

compel arbitration did not specify a time for compliance."
(Resp't Opp'n to Pet. Mot. to Hold Resp't in Contempt 2.)
Petitioner failed to request that the court include a deadline
for the commencement of arbitration and consequently, the fact
that arbitration is still not underway nearly three months later
is not in violation of a specific and definite court order.  Cf.
Lifescan, Inc. v. Premier Diabetic Servs., Inc., No. C-00-4472,
2001 WL 590011, at *1 (N.D. Cal. May 16, 2001) (noting that
petitioner could seek to hold respondent in contempt if and when
respondent failed to "submit to arbitration within the 90 day
deadline").  To prevent this situation from barring future
contempt proceedings, the court will herein establish a firm
deadline for arbitration.

IT IS THEREFORE ORDERED that

(1) respondent's motion to stay arbitration be, and the
same hereby is, DENIED.

(2) petitioner's motion to hold respondent in contempt
be, and the same hereby is, DENIED.

(3) unless and until, upon further application by
respondent, the court orders otherwise, the parties shall submit
their dispute to an arbitrator within 60 days of the date of this
order.

DATED:  July 25, 2006

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

16